23CA0695 Marriage of Worley 08-01-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0695 Douglas County District Court No. 20DR30951 Honorable Robert Lung, Judge In re the Marriage of Christopher M. Worley, Appellee, and Sonya L. Ferriere, Appellant. JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS Division I Opinion by JUDGE SCHOCK J. Jones and Welling, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 1, 2024 Griffiths Law PC, Jennifer Schaffner, Jamie Paine, Lone Tree, Colorado, for Appellee Belzer Law, Aaron B. Belzer, Ashlee N. Hoffmann, Boulder, Colorado, for Appellant 
1 ¶ 1 In this dissolution of marriage case between Christopher M. Worley (husband) and Sonya L. Ferriere (wife), wife appeals the district court’s division of the marital estate and award of attorney fees and costs. We affirm the property division, reverse the ruling on attorney fees and costs, and remand for further proceedings. I. Background ¶ 2 The district court dissolved the parties’ six-year marriage and entered permanent orders. After setting aside each party’s separate assets and debts, the court divided the marital estate. ¶ 3 The court ordered the parties to sell the marital residence, a home on Star Streak Circle, and split the net proceeds. The court found that it would be inequitable to allow wife to keep the Star Streak home and that the sale of the home would provide each party enough money to purchase a new residence. In light of the ordered sale, the court did not value the home. But based on the parties’ competing expert valuations, the court anticipated that each party would receive at least $200,000 from the home’s equity. ¶ 4 The court then divided the remainder of the marital estate approximately equally, with wife receiving about $187,500 of the net assets and husband receiving about $195,500. In doing so, the 
2 court allocated to husband two credit card debts that he had incurred, in part, to pay his attorney fees and costs. The court excluded from the marital debts (1) the balance of a credit card that wife had used to pay a portion of her attorney fees and costs and (2) a $20,000 loan wife purportedly received from her ex-husband. ¶ 5 Concerning attorney fees, the court found that the fees wife had incurred to her then-current counsel (her third attorney in the case) were reasonable and necessary to litigate the case. Based on the parties’ disparate economic circumstances, particularly their disparate incomes (husband’s monthly income was almost $13,000 more than wife’s), the court ordered husband to pay wife’s counsel $25,000 under section 14-10-119, C.R.S. 2023. II. Property Division ¶ 6 Wife asserts that the district court erred in dividing the marital estate by (1) excluding wife’s purported loan from her ex-husband as a marital debt; (2) classifying the Star Streak home as a marital asset; and (3) treating the parties’ litigation expenses differently when allocating marital debts. We discern no reversible error. 
3 A. Standard of Review ¶ 7 The district court has great latitude to equitably divide the marital estate, and we will not disturb its ruling absent a showing of an abuse of discretion. LaFleur v. Pyfer, 2021 CO 3, ¶ 61; see also § 14-10-113(1), C.R.S. 2023. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. In re Marriage of Medeiros, 2023 COA 42M, ¶ 28. B. Wife’s Purported Loan from her Ex-Husband ¶ 8 Wife contends that the district court erred by concluding that her $20,000 loan from her ex-husband — purportedly incurred during the marriage — was not a marital debt. We disagree. ¶ 9 The court engages in a two-step process when determining whether to allocate a debt in the marital property division. See In re Marriage of Cardona, 2014 CO 3, ¶ 12 (discussing the process for determining marital property); In re Marriage of Jorgenson, 143 P.3d 1169, 1172 (Colo. App. 2006) (stating that a court’s allocation of marital debts is in the nature of property division). First, the court must determine whether the party actually incurred a liability that must be repaid or if, instead, the party received a gift. See 
4 Cardona, ¶ 12; cf. In re Marriage of Hoffman, 650 P.2d 1344, 1345-
46 (Colo. App. 1982). This is a factual question. See Hoffman, 650 P.2d at 1345-46. Second, if the court finds that a debt exists, it must determine whether that debt is marital and subject to the court’s allocation or is separate and shielded from its division. See Cardona, ¶ 12; Jorgenson, 143 P.3d at 1172; see also § 14-10-
113(1). A debt incurred during the marriage is presumed to be marital. See Jorgenson, 143 P.3d at 1172; see also § 14-10-113(3). ¶ 10 In allocating the parties’ marital debts, the court recognized that wife sought credit for the loan from her ex-husband. But it rejected that allocation as “inequitable and inappropriate,” and it declined to include the purported loan as a marital debt. ¶ 11 Although the court’s findings could have been clearer, the court appears to have excluded the purported loan because the court did not find it to be a valid debt. If the court had determined that the debt was separate, as wife suggests, it would presumably have addressed that loan in the section of its ruling specifically identifying the parties’ separate assets and debts. It did not. Instead, it did not treat the purported loan as a debt at all. 
5 ¶ 12 We discern no error in the court’s finding. When, as here, a party receives the benefit of payments made by someone with a close personal relationship to the party, the court may reasonably infer that the payment was a gift, absent evidence to the contrary. Cf. First Nat’l Bank of Fort Collins v. Honstein, 144 Colo. 176, 178, 355 P.2d 535, 536 (1960) (“Transfers of property between parents and children are presumed to be gifts until the contrary is clearly and unequivocally shown.”). Therefore, wife bore the burden to show that the purported loan from her ex-husband was, in fact, a valid debt. See People in Interest of S.E.G., 934 P.2d 920, 922 (Colo. App. 1997) (“The burden of proof generally rests upon the party who asserts the affirmative of an issue. The test is to determine which party would be successful if no evidence were to be adduced and then place the burden of proof on the adverse party; thus, the party seeking to change the status quo bears the burden of proof.”). ¶ 13 But at the permanent orders hearing, wife presented no testimony, or other evidence, to establish the existence of this purported debt. See In re Parental Responsibilities Concerning N.J.C., 2019 COA 153M, ¶ 49 (recognizing that the parties must present the relevant evidence to the district court and their failure 
6 to do so does not provide grounds for reversal); In re Marriage of Eisenhuth, 976 P.2d 896, 901 (Colo. App. 1999) (noting that the court considers the evidence presented to it). She simply reported the purported $20,000 loan as a line item on her sworn financial statement and listed it on the property division spreadsheet. ¶ 14 It was for the district court to determine the credibility, weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn from that evidence. In re Marriage of Thorburn, 2022 COA 80, ¶ 49. Because the record supports the district court’s finding, we may not disturb that finding. See id.; In re Marriage of Evans, 2021 COA 141, ¶ 45. ¶ 15 To the extent wife highlights her testimony at the temporary orders hearing concerning the purported loan, she did not present or cite that evidence at the permanent orders hearing. But in any event, at the temporary orders hearing, wife merely testified, without corroborating evidence, that her ex-husband had used his credit card to pay some of her moving expenses and that she owed him this money. The court was free to believe all, part, or none of wife’s testimony, even if it was uncontroverted. See Thorburn, ¶ 50. 
7 ¶ 16 Wife also asserts that husband appeared to concede the loan was a marital debt by identifying it as such on his proposed property division spreadsheet. But the court explicitly rejected both parties’ proposed allocation of debts as inequitable. And wife does not develop any separate argument challenging that determination. See In re Parental Responsibilities Concerning S.Z.S., 2022 COA 105, ¶ 29 (declining to address an undeveloped argument). ¶ 17 We therefore are not persuaded that the district court erred by not allocating this purported loan as a marital debt. C. The Star Streak Home ¶ 18 Wife contends that the district court erred by not setting aside the Star Streak home as her separate property when the parties had agreed to exclude that home from the marital estate. We disagree. ¶ 19 All property acquired during the marriage is presumed marital. § 14-10-113(3). A party may overcome this presumption by showing that the parties had a valid agreement to exclude the property from the marital estate. § 14-10-113(2)(d). The party seeking to have property declared separate bears the burden to establish that it retains its separate character. Medeiros, ¶ 52. 
8 ¶ 20 The parties acquired the Star Streak home during the marriage. Wife therefore bore the burden to overcome the presumption that it was marital property. Id. The court found, albeit implicitly, that wife did not meet that burden, and the record supports its finding. See In re Marriage of Morton, 2016 COA 1, ¶¶ 5, 13 (noting that, when supported by the record, we must defer to the district court’s factual findings on the classification of property as marital or separate); MGM Supply Co. v. Indus. Claim Appeals Off., 62 P.3d 1001, 1005 (Colo. App. 2002) (“Whether [the] burden of proof has been satisfied is a question of fact . . . .”); see also S.Z.S., ¶ 23 (recognizing that findings may be implicit). ¶ 21 Early in the dissolution proceeding, wife claimed that husband had agreed to purchase the Star Streak home for her and, by doing so, had agreed it was her separate property. Husband disputed her claim. But wife did not make this argument at the permanent orders hearing. Nor did she present any evidence of such an agreement. Indeed, she listed the home as marital property on the parties’ joint property division spreadsheet. In the absence of any such evidence or argument, the court reasonably determined that wife had not overcome the marital property presumption. See 
9 § 14-10-113(3). To the extent wife presented additional evidence over four months later when she moved to stay the judgment, that was too late. See N.J.C., ¶ 49; Eisenhuth, 976 P.2d at 901. ¶ 22 Wife also argues that the court made no express findings addressing her separate property claim. But given wife’s failure to assert such a claim at the permanent orders hearing, much less develop any supporting argument, we conclude that the court’s findings were sufficient. See S.Z.S., ¶ 23; see also § 14-10-113(3). ¶ 23 We also reject wife’s undeveloped suggestion that the court erred by ordering the parties to sell the home. See In re Marriage of Lafaye, 89 P.3d 455, 462 (Colo. App. 2003) (The “mechanism employed by the [district] court for dividing the marital estate is a matter within the court’s discretion.”); see also S.Z.S., ¶ 29. ¶ 24 The district court therefore did not err by allocating the Star Streak home as a marital asset in its marital property division and ordering the parties to sell the home and divide the proceeds. D. The Litigation Expenses as Marital Debts ¶ 25 Wife next contends that the district court abused its discretion by allocating as marital debts certain debts husband incurred to pay his attorney but declining to include debts wife incurred to pay 
10 her attorneys. We conclude that the court correctly excluded wife’s debts related to her attorney fees and that any error by the court in including husband’s attorney-fee-related debts was harmless. ¶ 26 A debt incurred during the marriage for attorney fees and costs associated with the dissolution proceeding is not a marital debt subject to allocation. In re Marriage of Burford, 26 P.3d 550, 559 (Colo. App. 2001); In re Marriage of Rieger, 827 P.2d 625, 625 (Colo. App. 1992) (“[W]e find no authority for the characterization of . . . attorney fees as a non-challengeable marital debt under § 14-
10-113 . . . .”). But see Burford, 26 P.3d at 559 (stating that litigation costs that have been “paid . . . may be allocated in the property division through reimbursement”). Rather, such litigation expenses may be apportioned only in accordance with section 14-
10-119. See Burford, 26 P.3d at 559; Rieger, 827 P.2d at 625. ¶ 27 Wife argues that, at the permanent orders hearing, she reported the following outstanding debts related to her attorney fees: (1) an unpaid $36,000 bill to her previous dissolution attorney, Marc Kaplan; (2) an additional loan from her ex-husband for $30,000; and (3) a Pen Fed credit card debt that she incurred to pay a retainer fee to Kaplan, which had an outstanding balance of 
11 almost $11,000. The court declined to include the Pen Fed credit card as a marital debt, noting that wife used that credit card to pay her previous attorney. The court did not address Kaplan’s outstanding bill or the purported attorney fee loan from wife’s ex-
husband. But wife does not dispute that all these debts were associated with her outstanding litigation expenses. The court therefore did not err by excluding them from its allocation of marital debts. See Burford, 26 P.3d at 559; Rieger, 827 P.2d at 625. ¶ 28 Wife also argues that the court improperly allocated litigation expenses that husband incurred on two credit cards he used to pay attorney fees and costs, particularly when it declined to include wife’s litigation expenses. Even assuming the court erred by treating these as marital debts, we conclude that any error was harmless. An appellate court may disregard any error or defect in a dissolution proceeding when the aggregate effect of the error does not affect the parties’ substantial rights. C.A.R. 35(c); see In re Marriage of Balanson, 25 P.3d 28, 36 (Colo. 2001). A court’s error in dividing the marital estate that affects only a small percentage of the overall marital estate is harmless. Balanson, 25 P.3d at 36. 
12 ¶ 29 The court found that husband had an outstanding balance of approximately $12,500 on one credit card and approximately $3,000 on the other. The record reveals that although these two credit cards had a total outstanding balance of $15,500, this balance did not include only charges to husband’s attorney. Husband also used these credit cards to purchase personal items throughout the dissolution proceeding, and he consistently made payments toward the unpaid balances. Thus, the exact amount of litigation expense debt remaining on these credit cards is unclear. ¶ 30 But even assuming the total unpaid debt was associated with husband’s litigation expenses, any error by allocating the aggregate $15,500 debt accounts was too small of a percentage of the entire marital estate to warrant reversal. These debts amount to less than 2% of the estimated $783,000 marital estate as valued by the court (consisting of $400,000 of anticipated net proceeds from the sale of the Star Streak home and approximately $383,000 in additional net assets). See id. at 38 (suggesting that a property division error affecting less than 2% of the overall marital estate is harmless). 
13 ¶ 31 Thus, the district court acted within its discretion by declining to allocate wife’s litigation expenses, and any error allocating husband’s litigation expenses does not warrant reversal. III. Section 14-10-119 Attorney Fees and Costs ¶ 32 Wife next contends that the district court erred by awarding her only $25,000 for her attorney fees and costs under section 14-
10-119. She argues that the court did not sufficiently explain the basis for its determination or consider all her litigation expenses. We agree that the district court’s findings are insufficient. ¶ 33 To ensure that a party in a dissolution proceeding does not suffer undue economic hardship, a court may equitably apportion attorney fees and costs between parties based on their relative economic circumstances. In re Marriage of Collins, 2023 COA 116M, ¶ 49; see § 14-10-119. The court has broad discretion to do so based on the circumstances of the case, and we will not disturb the court’s decision absent a showing of an abuse of discretion. See In re Marriage of Gutfreund, 148 P.3d 136, 141 (Colo. 2006). ¶ 34 But in awarding attorney fees and costs under section 14-10-
119, the court must make findings of fact and conclusions of law sufficiently explicit to give the appellate court a clear understanding 
14 of the basis for its decision. See In re Marriage of Aldrich, 945 P.2d 1370, 1378 (Colo. 1997); In re Marriage of Rozzi, 190 P.3d 815, 822 (Colo. App. 2008). The court must “explain how and why it arrived at the specific amount of the award.” Aldrich, 945 P.2d at 1378. ¶ 35 Wife presented evidence that she had incurred attorney fees and costs associated with the dissolution proceeding that exceeded $100,000. Those fees included (1) an unpaid debt of approximately $36,000 to her first attorney, Kaplan; (2) more than $15,000 to her second attorney, Robert Abrams, who had represented her at the temporary orders hearing; and (3) approximately $61,000 to her then-current attorney, Elizabeth Bonanno. As noted above, she testified that she had paid some of these fees with a $30,000 loan from her ex-husband and the debt from the Pen Fed credit card, which had an outstanding balance of almost $11,000. ¶ 36 At the time of the permanent orders hearing, the anticipated shortfall in fees owed to Bonanno alone — after taking into account the amount remaining in wife’s trust account — was $26,249.53. This shortfall did not include the amounts that wife had already paid to Bonanno or the amounts that wife had paid and still owed to either of her prior attorneys, Kaplan and Abrams. 
15 ¶ 37 In awarding wife attorney fees under section 14-10-119, the court found that Bonanno’s fees were reasonable and necessary. Then, without further discussion, the court ordered husband to pay $25,000 to Bonanno — the approximate amount of the anticipated shortfall for Bonanno’s fees. The district court did not address the additional attorney fees that wife had incurred during the case. ¶ 38 Even considering the district court’s findings in the permanent orders as a whole, we cannot discern any basis for the court’s decision to award wife $25,000. See id. Wife indicated that she had incurred over $100,000 in attorney fees and costs and that she had a substantial amount of outstanding debt incurred to pay those litigation expenses. But it appears that the court only considered one portion of those fees and costs — the portion wife would owe her then-current attorney after her trust account had been exhausted. The court made no findings concerning the other attorney fees and costs wife had incurred, including (1) the $36,000 she still owed to Kaplan; (2) the more than $15,000 she paid to Abrams; or (3) the fees she had already paid to Bonanno. Nor did the court address wife’s outstanding debts for those fees, including 
16 the purported $30,000 loan from her ex-husband and the $11,000 on the Pen Fed credit card. ¶ 39 Husband attempts to salvage the court’s ruling by pointing out that he paid wife’s attorneys $23,000 after temporary orders and $10,000 before the permanent orders hearing. He also asserts that wife had an opportunity to settle the debt to Kaplan for $14,000 and failed to do so. But the court made no findings indicating that it considered either of these circumstances in awarding wife $25,000. Nor do they alone explain the court’s award. ¶ 40 We thus agree with wife that the district court did not make sufficient findings to explain its decision to award her $25,000 under section 14-10-119. See id.; Rozzi, 190 P.3d at 822. We therefore reverse this portion of the court’s judgment and remand the issue for reconsideration. On remand, the court must make findings sufficiently explicit to give us a clear understanding of the basis of its decision. It must also make its decision based on the parties’ economic circumstances at the time of the permanent orders hearing. See In re Marriage of de Koning, 2016 CO 2, ¶ 33. 
17 IV. Appellate Attorney Fees and Costs ¶ 41 Wife requests an award of her appellate attorney fees and costs due to the disparity in the parties’ financial resources. See § 14-10-119; Collins, ¶ 86. Because the district court is better equipped to address the factual issues associated with this request, we direct it to address wife’s section 14-10-119 request for attorney fees and costs on remand. See Collins, ¶ 86; see also C.A.R. 39.1. ¶ 42 The district court should also address wife’s request for appellate costs under C.A.R. 39. See C.A.R. 39(a)(4) (“[I]f a judgment is affirmed in part [and] reversed in part . . . costs are taxed only as ordered by the [district] court.”). V. Disposition ¶ 43 We reverse the portion of the judgment that awarded wife attorney fees and costs under section 14-10-119 and remand the case for further proceedings consistent with this opinion. On remand, the court must also address wife’s request for appellate attorney fees and costs. The judgment is otherwise affirmed. JUDGE J. JONES and JUDGE WELLING concur.